IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| VICKIE YOUNG, as Personal Representative of the Estate of JAMES NATHAN RHODES, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:13CV864 |
| AMERICAN TALC COMPANY, *et al.* | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Master Industries, Inc. ("Master Industries") and Master Industries Worldwide, LLC ("Master Worldwide"), (collectively "the Master Defendants"), move to dismiss the claims against them for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure. (ECF Nos. 275, 282.) For the reasons set forth below, the Master Defendants' motions to dismiss will be granted.

**I. BACKGROUND**

James Nathan Rhodes was diagnosed with mesothelioma on or about April 2, 2013 and died on October 20, 2013. (ECF No. 306 ¶ 2.) According to the Complaint,[1] Mr. Rhodes "contract[ed] an incurable asbestos cancer . . . as a result of breathing asbestos dust." (*Id.* ¶

---

[1] References to "the Complaint" refer to the Third Amended Civil Action Complaint, which the parties have stipulated is the operative Complaint to which the Master Defendants' pending motions apply, (ECF No. 303 ¶ 13). Though filed subsequent to the pending motions to dismiss, all allegations against the Master Defendants in Plaintiff's Third Amended Civil Action Complaint are unchanged from the earlier Complaint.

7.) Mr. Rhodes "worked full days as a boiler room, turbine room and powerhouse mechanic and . . . was exposed to asbestos beginning in approximately 1966." (*Id.*) In addition, Plaintiff alleges that "Mr. Rhodes was an avid bowler" who "bowled regularly in Kannapolis, North Carolina, Salisbury, North Carolina and Rock Hill, South Carolina," from the 1990's through 2013. (*Id.* ¶¶ 10, 14B.) Plaintiff further alleges that Mr. Rhodes "regularly and frequently" used Easy Slide, a product manufactured by the Master Defendants, which he applied to the sole of his bowling shoe "to allow him to slide on the approach to throwing the ball to the pins." (*Id.* ¶¶ 10, 11.) According to Plaintiff, Easy Slide "was a talc- or powder-based product that also contained substantial amounts of carcinogenic asbestos fibers." (*Id.* ¶ 11.)

Master Industries, founded in 1969 and dissolved effective November 15, 2012, was a California corporation, with its principal place of business in California. (ECF No. 282-1 ¶¶ 2, 3, 6.) The company "manufactured and distributed various bowling products and accessories," including Easy Slide. (*Id.* ¶ 5.) Effective January 1, 2012, Master Worldwide, "a separate, distinct and wholly unrelated entity" from Master Industries, "purchased the assets, but not the liabilities, of Master Industries." (ECF No. 275-1 ¶ 3; ECF No. 282-1 ¶ 4.) Master Worldwide is a "Utah limited liability company which was formed . . . on June 29, 2011." (ECF No. 275-1 ¶ 2.) Like Master Industries, Master Worldwide "manufactures and distributes bowling products and accessories." (*Id.* ¶ 4.) "One of the product lines purchased from Master Industries . . . [was] the 'Easy Slide' product." (*Id.*)

In response to the Master Defendants' motions to dismiss, Plaintiff requested limited jurisdictional discovery on the issue of specific personal jurisdiction.[2] (ECF Nos. 291, 292 at 2.) The Court granted Plaintiff's Motion for Limited Jurisdictional Discovery. (ECF No. 324.) Following the close of the limited discovery period, the parties submitted supplemental briefs on the issue of personal jurisdiction, (ECF Nos. 334, 335, 336), as ordered by the Court, (ECF Nos. 328, 330). The Court heard oral argument on November 3, 2017 pursuant to Plaintiff's request, (ECF No. 488), and during the hearing the Court granted the Master Defendants' motions to dismiss. The following serves as the basis for the Court's ruling in this matter.

## II.    STANDARD OF REVIEW

When a nonresident defendant challenges personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the jurisdictional issue is for the judge to resolve with the plaintiff having to bear the ultimate burden of proving jurisdiction. *See Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

The Fourth Circuit has observed that the plaintiff's burden of proof "varies according to the [procedural] posture of [the] case and the evidence that has been presented to the court." *Grayson*, 816 F.3d at 268. Ordinarily, where a court decides a pretrial personal jurisdiction motion without conducting an evidentiary hearing—relying instead on motion papers, supporting legal memoranda, and allegations in the complaint—the plaintiff only has to make a prima facie showing of personal jurisdiction. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d

---

[2] In her brief in support of the motion for limited discovery, Plaintiff specified that she sought only to proceed on a claim of "specific not general jurisdiction." (ECF No. 292 at 2.)

3

273, 276 (4th Cir. 2009). Where, however, the parties have engaged in discovery on the issue of personal jurisdiction and have submitted evidence beyond the pleadings, as in this case, the court "must hold the plaintiff to its burden of proving facts, by a preponderance of the evidence, that demonstrate the court's personal jurisdiction over the defendant." *Grayson*, 816 F.3d at 268; *see also AARP v. Am. Family Prepaid Legal Corp.*, 604 F. Supp. 2d 785, 797 (M.D.N.C. 2009) (holding the plaintiff to a preponderance of the evidence standard because the parties had engaged in jurisdictional discovery).

### III.  PERSONAL JURISDICTION

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). A federal district court can exercise personal jurisdiction over a nonresident defendant only if "(1) such jurisdiction is authorized by the long-arm statute of the state in which the district court sits; and (2) application of the relevant long-arm statute is consistent with the Due Process Clause of the Fourteenth Amendment." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014). North Carolina's long-arm statute "permits the exercise of personal jurisdiction . . . to the outer limits allowable under federal due process." *Id.*; *Dillon v. Numismatic Funding Corp.*, 231 S.E.2d 629, 630–31 (N.C. 1977) (holding that, by enacting N.C. Gen. Stat. § 1–75.4(1)(d), the North Carolina General Assembly "intended to make available to the North Carolina courts the full jurisdictional powers permissible under federal due process"). The two-prong test, therefore, "merges into [a] single question," allowing the court to proceed directly to the constitutional analysis. *Universal Leather*, 773 F.3d at 558–59; *see ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 391 (4th Cir. 2012).

4

Under the Due Process Clause of the Fourteenth Amendment, two paths permit a court to exercise personal jurisdiction over a nonresident defendant. *Universal Leather*, 773 F.3d at 559. One path is general jurisdiction, "which permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit." *Walden*, 134 S. Ct. at 1121 n.6. The other path is specific jurisdiction, which "depends on an 'affiliatio[n] between the forum and the underlying controversy.'" *Id.* (alteration in original) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). As previously stated, Plaintiff seeks only to proceed on a "claim of specific not general jurisdiction." (ECF No. 336 at 1 n.1 (citing ECF No. 292 at 2).) The Court will, therefore, confine its analysis to whether it has specific jurisdiction over the Master Defendants.

Specific jurisdiction requires "that the relevant conduct have such a connection with the forum state that it is fair for the defendant to defend itself in that state." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009); *Universal Leather*, 773 F.3d at 559 (recognizing that the touchstone of the specific jurisdictional inquiry is fairness). A court may exercise specific jurisdiction when "the defendant has purposefully directed [its] activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quotations and citation omitted). The Fourth Circuit employs a three-prong test to determine whether the exercise of specific jurisdiction comports with the requirements of due process: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims [arose] out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable." *Universal*

5

*Leather*, 773 F.3d at 559 (alteration in original) (quoting *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 302 (4th Cir. 2012)). Only if the court finds that the plaintiff has satisfied the purposeful availment prong does the court need to consider the remaining prongs of the specific jurisdiction test articulated by the Fourth Circuit. *Consulting Eng'rs*, 561 F.3d at 278.

The "purposeful availment" prong of the specific jurisdiction analysis "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King*, 471 U.S. at 475 (quotations and citation omitted). It is rooted in the concept of minimum contacts and contemplates whether "the defendant's conduct and connection with the forum [s]tate are such that he should reasonably anticipate being haled into court there." *Universal Leather*, 773 F.3d at 559 (alteration in original) (quoting *Fed. Ins. Co. v. Lake Shore, Inc.*, 886 F.2d 654, 658 (4th Cir. 1989)). The analysis is "flexible" and involves a case-by-case consideration of several factors. *Id.* at 560 (quoting *Tire Eng'g*, 682 F.3d at 302). In the business context, courts consider the following non-exhaustive list of factors:

> (1) "whether the defendant maintains offices or agents in the forum state;" (2) "whether the defendant owns property in the forum state;" (3) "whether the defendant reached into the forum state to solicit or initiate business;" (4) "whether the defendant deliberately engaged in significant or long-term business activities in the forum state;" (5) "whether the parties contractually agreed that the law of the forum state would govern disputes;" (6) "whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;" (7) "the nature, quality and extent of the parties' communications about the business being transacted;" and (8) "whether the performance of contractual duties was to occur within the forum."

*Id.* (quoting *Consulting Eng'rs,* 561 F.3d at 278). Relevant to the analysis is the quality and nature of the defendant's connections, rather than the number of contacts between the defendant and the forum state. *Tire Eng'g,* 682 F.3d at 301. The relationship between the defendant, the forum state, and the litigation "must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden,* 134 S. Ct. at 1122 (quoting *Burger King,* 471 U.S. at 475). The defendant cannot, therefore, be subject to the jurisdiction of a court based on the unilateral actions of another. *Burger King,* 471 U.S. at 475. When a defendant has created a "substantial connection" to the forum state, "then it has purposefully availed itself of the privilege of conducting business there." *Wright v. Zacky & Sons Poultry, LLC*, 105 F. Supp. 3d 531, 538 (M.D.N.C. 2015). *See Walden*, 134 S. Ct. at 1121 (stating that "to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State").

## IV. DISCUSSION

Plaintiff argues generally that this Court has specific jurisdiction over the Master Defendants. (*See generally* ECF No. 336.) More specifically, Plaintiff argues, among other things, that based on the stream of commerce theory, the Master Defendants purposefully availed themselves of the privilege of conducting business in North Carolina by selling their product to distributors that it knew or should have known would distribute the product into the state of North Carolina. (ECF No. 336 at 6.) According to Plaintiff, the Master Defendants "knew North Carolina bowlers used [their] products and should have expected that if a bowler claimed to be injured from using one of those products, they could be sued here." (*Id.*) In addition, Plaintiff argues that Master Industries' connections to North Carolina

7

through its website and marketing efforts were sufficient to support personal jurisdiction. Thus, this Court must individually assess each defendant's contacts with North Carolina, *Calder v. Jones,* 465 U.S. 783, 790 (1984), focusing on whether each "has expressly aimed or directed its conduct toward the forum state," such that constitutional fairness would require that defendant to defend an action in this state. *Young v. New Haven Advocate*, 315 F.3d 256, 262 (4th Cir. 2002) (citing *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 625–26 (4th Cir. 1997)).

A.  Master Industries

Master Industries argues that "[d]espite the extensive information Plaintiff[ ] ha[s] learned from [the limited jurisdictional discovery], there is *no information* supporting the exercise of specific jurisdiction over Master [Industries]." (ECF No. 334 at 5.) While the Court concludes that Master Industries had some limited contacts with the state of North Carolina, such contacts are not sufficient to support the exercise of personal jurisdiction over Master Industries.

It is undisputed that Master Industries maintained no offices, facilities, employees, mailing addresses, telephone listings, bank accounts, or real or personal property in North Carolina. (ECF No. 282-1 ¶¶ 7, 8, 9.) Nor was Master Industries ever registered to conduct business in the state. (*Id.* ¶ 10.) Nonetheless, Plaintiff offers a number of arguments to support her position that this Court does, in fact, have personal jurisdiction over Master Industries.

First, Plaintiff contends that that she can establish that Master Industries purposefully availed itself of the privilege of conducting business in North Carolina by entering Easy Slide into the stream of commerce. (ECF No. 336 at 7–9.) The stream of commerce theory refers

8

to "'the movement of goods from manufacturers through distributors to consumers,' ending in the forum state." *Syngenta Crop Prot., LLC v. Willowood, LLC*, 139 F. Supp. 3d 722, 730 (M.D.N.C. 2015) (quoting *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011) (plurality opinion)). The Supreme Court has stated that "a defendant's placing goods into the stream of commerce 'with the expectation that they will be purchased by consumers in the forum State' may indicate purposeful availment." *Nicastro*, 564 U.S. at 881–82 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980)). However, as the Court recognized, this theory "does not amend the general rule of personal jurisdiction"; rather, "[i]t merely observes that a defendant may in an appropriate case be subject to jurisdiction without entering the forum." *Id.* at 882. In such a case, the principal inquiry remains "whether the defendant's activities manifest an intention to submit to the power of a sovereign." *Id.* "The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; [because] as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." *Id.* As explained by the Fourth Circuit,

> To permit a state to assert jurisdiction over any person in the country whose product is sold in the state simply because a person must expect that to happen destroys the notion of individual sovereignties inherent in our system of federalism. Such a rule would subject defendants to judgment in locations *based on the activity of third persons and not the deliberate conduct of the defendant*, making it impossible for defendants to plan and structure their business contacts and risks.

*Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945 (4th Cir. 1994) (emphasis added).

9

Plaintiff argues that Master Industries "made purposeful efforts to market and sell its products through distributors and directly into the State," as well as into other States. (ECF No. 336 at 6.) This argument, however, misses the mark. The evidence before the Court shows that Master Industries sold "95 to 99 percent" of its products to distributors whom it considered their "end-user customer[s]." (ECF No. 341-1 at 9, 13; *see* ECF No. 334-1 at 4.) Further, "Master did not have written contracts with its distributors, but instead shipped its products to those distributors after the distributor initiated the order and request[ed] . . . products." (ECF No. 334-1 at 3.) Once Master sold its products to its distributors, it had no knowledge of, or further involvement with, the distributors' subsequent sales or distribution of its products. (*See* Kay Dep. Tr.,[3] ECF No. 341-1 at 7, 21; *see also* ECF No. 334-1 at 4.) *See Windsor v. Spinner Indus. Co.*, 825 F. Supp. 2d 632, 639 (D. Md. 2011) (describing conduct of distributors and manufacturers who have no connection to this case "miss[es] the substance of the jurisdictional inquiry, which is 'whether, focusing upon the relationship between *the defendant*, the *forum*, and the *litigation*, it is fair, in light of *the defendant's contacts* with that forum, to subject the defendant to suit there'" (quoting *Nicastro*, 564 U.S. at 891)).

Nevertheless, Plaintiff argues that Master Industries knew, or should have known, that its products were being sold by distributors, "through the chain of distribution," into North Carolina. (ECF No. 336 at 8, 12–13.) As stated earlier, according to Plaintiff, Master Industries "knew North Carolina bowlers used its products and should have expected that if

---

[3] References to "Kay Dep. Tr." refers to the deposition transcript of Cathy Kay, the Master Defendants' 30(b)(6) designee, whose deposition testimony was taken during the limited jurisdictional discovery period. Ms. Kay is the current General Manager and Controller of Master Worldwide and the former Controller for Master Industries. (Kay Dep. Tr., ECF No. 341-1 at 4.)

10

a bowler claimed to be injured from using one of those products, they could be sued here." (ECF No. 336 at 6.) This argument is, likewise, unpersuasive, given that the Supreme Court has "ma[de] clear that it is the defendant's actions, *not his expectations*, that empower a State's courts to subject him to judgment." *Nicastro*, 564 U.S. at 883 (emphasis added). During oral argument, counsel for Plaintiff relied heavily on *Cree, Inc. v. Bridgelux, Inc.*, No. 1:06CV00761, 2007 WL 3010532 (M.D.N.C. July 5, 2007), *adopted by,* 2007 WL 3170188 (M.D.N.C. Aug. 21, 2007), for the proposition that Master Industries knew or should have known that their product was likely to end up in North Carolina. Plaintiff's reliance is misplaced, however, as Plaintiff selectively chose to rely on one part of the test articulated in *Cree*—foreseeability—while ignoring the other critical component discussed by the Court—namely, "purposeful conduct" by the defendant in the forum state, *see Cree*, 2007 WL 3010532, at *5. As explained by the court in *Cree*, "the mere presence of a defendant's product in the forum will not subject it to the forum's jurisdiction." *Id.* Rather, there must be "some active effort [by the manufacturer] to direct or otherwise initiate the distribution of their product in the forum." *Id.*

Plaintiff next contends that Master Industries marketed its Easy Slide product via its website which displayed a product catalog "available for anyone in any state," and which included a map of the United States showing where its various distributors were located, "including a distributor physically located in our State." (ECF No. 336 at 8.) While the company's products (including Easy Slide) and product information appeared in a catalog on its website, the "'action of placing information on the Internet' is not sufficient by itself to 'subject[ ] [defendant] to personal jurisdiction in each State in which the information is

11

accessed.'" *Carefirst of Md.*, 334 F.3d at 399 (quoting *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (first alteration in original)). Further, there is no evidence in the record that the catalog displayed on the company's website targeted North Carolina. *See ALS Scan,* 293 F.3d at 714 (holding in the Internet context that, to find specific personal jurisdiction, the out-of-state defendant's Internet activity must be expressly targeted at, or directed to, the forum state). Even the inclusion of a map on the website displaying, in red shading, the states where distributors were located fails to show activity specifically directed at North Carolina, as opposed to any other state identified on the website. Essentially, "[n]othing about the website suggests that [Master Industries] has specifically directed electronic activity toward North Carolina with any manifested intent of engaging in business or other interactions with the state."[4] *Pathfinder Software, LLC v. Core Cashless, LLC*, 127 F. Supp. 3d 531, 542 (M.D.N.C. 2015). *See Eagle Coffee Co. v. Eagle Coffee Int'l, Inc.*, No. L-09-2585, 2010 WL 481201, at *4 (D. Md. Feb. 4, 2010) (explaining that defendant did not "purposefully direct[ ] its activities, *electronic or otherwise*" to the forum state, as "nothing on [defendant's] website suggests that it intended to target" residents of the forum state "more than residents of any other state" (emphasis added)).

The evidence also shows that, prior to the dissolution of Master Industries, customers were, for the most part, unable to order products via the company's website. *Woods Int'l, Inc. v. McRoy*, 436 F. Supp. 2d 744, 750–51 (M.D.N.C. 2006) (explaining that defendant's passive

---

[4] When assessing whether a defendant's Internet activity is sufficient to support personal jurisdiction, the Fourth Circuit has held that jurisdiction is appropriate when the nonresident defendant "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *ALS Scan*, 293 F.3d at 714.

12

website, which did not accept orders but provided information on its products and gave contact information, was insufficient to subject defendant to specific jurisdiction in North Carolina). The record does reflect, however, a period of approximately two years, beginning around the year 2000, during which customers were able to place online orders, through the company's website, for certain products that were not available from distributors. (Kay Dep. Tr., ECF No. 341-1 at 6, 10; ECF No. 282-1 ¶ 16.) Record evidence demonstrates that none of the online sales during this period, however, involved the sale of the Easy Slide product to any customer, in North Carolina or elsewhere. (*See* ECF No. 341-1 at 10; ECF No. 282-1 ¶ 16.) In addition, there is no evidence to show that any such sales were the result of sales efforts by Master Industries. Thus, Master Industries' web activity fails to support Plaintiff's purposeful availment argument. *See Fed. Ins. Co. v. Lake Shore, Inc.*, 886 F.2d 654, 658 (4th Cir. 1989) (finding no purposeful availment where sales to South Carolina residents were "not the result of sales efforts by [the defendant] in South Carolina" but were rather "initiated by the customer").

Plaintiff next points to the fact that Master Industries had "a distributor physically located in our State" as evidence that the company "considered North Carolina to be one of the states its product was distributed and sold in." (*See* ECF No. 336 at 8 (emphasis omitted).) This evidence is likewise unavailing in that it fails to demonstrate that Master Industries targeted its business at North Carolina. Between approximately 1999 and 2008, Master Industries' website listed one distributor in North Carolina—Saunier-Wilhem. (ECF No. 334-1 at 5.) This distributor had its main location in Pennsylvania, with stores in Alabama and Greensboro, North Carolina. (*Id.*) Master Industries, however, never shipped the Easy Slide

13

product to its North Carolina distributor. (ECF No. 334-1 at 5; ECF No. 282-1 ¶ 12; Kay Dep. Tr., ECF No. 341-1 at 26.) Although Plaintiff argues that Mr. Rhodes purchased Easy Slide from a bowling alley in North Carolina, the owner/operator of that facility testified that he purchased the product, not from Master's Industries' North Carolina distributor, but from Ace Mitchell Bowlers Mart, a distributor in Tennessee. (Supplemental Declaration of Robert M. Paolino, ECF No. 336-4 ¶ 3; ECF No. 336 at 2, 6, 8.)

Further, Plaintiff's argument that "Master [Industries] sold some units of Easy Slide over the years directly to buyers in North Carolina," (ECF No. 336 at 8 (emphasis omitted)), does not support her position that this Court has specific personal jurisdiction over Master Industries. The evidence shows that, from 1995 through 2007, Master Industries sold Easy Slide to four North Carolina customers. (ECF No. 334-6 at 2.) These four North Carolina customers included two military bases, as well as two individuals, each of whom purchased one packet of Easy Slide. (*Id.*) This evidence falls woefully short of the kind of regular course of sales necessary to show specific jurisdiction based on a stream of commerce theory. *See Nicastro*, 564 U.S. at 889 (Breyer, J., concurring) (explaining that there was no regular course or flow of sales into the forum in rejecting specific jurisdiction based on stream of commerce); *Burger King*, 471 U.S. at 475–76 n.18, (noting that the "reasonable foreseeability of litigation in the forum is substantially diminished" when acts are occasional or isolated and thus create an attenuated affiliation with the forum); *Eagle Coffee*, 2010 WL 481201, at *4 (expressing doubt that seven sales over a twenty-five year period, although occurring within the past two years, "can be considered anything more than isolated occurrences").

Finally, during oral argument, Plaintiff's counsel argued that Master Industries marketed the Easy Slide product to Mr. Rhodes because it was displayed in a bowling alley in packaging that bore the "Master" logo. Plaintiff's counsel further asserted that Master Industries would be subject to personal jurisdiction in any state in which its product was displayed bearing the "Master" logo. The Court finds this argument unpersuasive because it completely ignores the "touchstone of the minimum contacts analysis"— an evaluation of whether a nonresident defendant has "engaged in some activity purposefully directed toward the forum state." *Lesnick*, 35 F.3d at 945. Plaintiff provides no case law support for the assertion that merely displaying a product bearing a manufacturer's name, without evidence that the manufacturer "purposefully directed" its marketing efforts to a specific state, is sufficient to demonstrate a manufacturer's purposeful availment of the forum.

In sum, although the evidence reveals that Master Industries had some contacts with North Carolina, the Court finds those contacts to be minimal and isolated, rather than purposefully directed to North Carolina. *See Sonoco Prods. Co. v. ACE INA Ins.*, 877 F. Supp. 2d 398, 405 (D.S.C. 2012) ("Minimal, isolated or unsolicited contacts, however, do not give rise to the required purposeful connection between an out of state defendant and the forum state."). Plaintiff has failed to satisfy its burden of showing purposeful availment, by a preponderance of the evidence. Having failed to satisfy the first prong of the specific jurisdiction test, the Court need not proceed to the second and third prongs. *See Consulting Eng'rs,* 561 F.3d at 278 ("If, and only if, we find that the plaintiff has satisfied this first prong of the test for specific jurisdiction need we move on to a consideration of prongs two and

three."). Thus, the Court concludes that it lacks specific personal jurisdiction over Master Industries, and that its motion to dismiss must be granted.

    B.    <u>Master Worldwide</u>

As stated earlier, Master Worldwide is a Utah company which purchased the assets of Master Industries on January 1, 2012. (ECF No. 275-1 ¶¶ 2, 3.) The company has two locations—a principal office located in Utah and a production facility located in California. (*Id.* ¶ 5.) Master Worldwide is not registered to do business in North Carolina, and has no offices, facilities, employees, or property in the state. (*Id.* ¶ 5.) Plaintiff argues that Master Worldwide is, nonetheless, subject to specific jurisdiction because: (i) "[i]t continued to use the same distributor list" as Master Industries; (ii) it "sponsored one or more bowling events with a North Carolina connection"; (iii) Master Worldwide "or its parent company, Storm, has sent a representative to locations in North Carolina to promote the company products"; (iv) Master Worldwide "now offers online ordering"; (v) since Master Worldwide "bought the business, resellers and distributors have continued to offer Easy Slide for sale to the general public"; and (vi) Master Worldwide "has continued to offer Easy Slide in its product catalogs." (ECF No. 336 at 14.) The Court's evaluation of the evidence as to Master Worldwide shows that its contacts with North Carolina are, at best, attenuated, and fail to satisfy the purposeful availment prong of the specific jurisdiction inquiry.

First, despite Plaintiff's contention that Master Worldwide "continued to use the same distributor list" as Master Industries, (*id.*), the evidence shows that, unlike Master Industries, Master Worldwide does not have a North Carolina distributor, (ECF No. 275-1 ¶ 6; ECF No. 335-3 at 3). Next, Plaintiff's reliance on evidence of activity by Master Worldwide's parent

company, Storm Products, Inc. ("Storm"), as support for its argument that this Court should exercise jurisdiction over Master Worldwide is misplaced. In particular, Plaintiff references Amateur Bowling Tournaments in North Carolina which was sponsored by Storm, not Master Worldwide. (ECF No. 336-6 at 20.) Plaintiff also points to the fact that Steven Todd, a sales representative for Storm, has held demonstrations of Storm company products in North Carolina, during which he displayed the Easy Slide product. (ECF No. 335-3 at 8–9.) The Court here, however, must evaluate whether Master Worldwide has purposefully availed itself of conducting business in the state; thus, contacts by the parent company—instead of Master Worldwide itself—are irrelevant to the Court's purposeful availment inquiry. *See Walden*, 134 S. Ct. at 1122 (quoting *Burger King*, 471 U.S. at 475) (explaining that a nonresident defendant's connection to the forum "must arise out of contacts that the 'defendant *himself*' creates with the forum State").

Next, although, as Plaintiff argues, Master Worldwide's products are currently available for purchase through its website, this functionality became available in 2014. (Kay Dep. Tr., ECF No. 341-1 at 6, 28.) During the period between January 1, 2012 (the date of Master Worldwide's asset purchase) through October 30, 2013 (the date of Mr. Rhodes' death), Master Worldwide's website was passive, rather than interactive, in that it provided only product and company information to the general public, but did not accept online orders. *See ALS Scan*, 293 F.3d at 714 (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) ("A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction.").

Finally, while Master Worldwide continues to display Easy Slide in its product catalog and sell the product to its distributors, the record is devoid of evidence showing that Master Worldwide targets North Carolina or its consumers, as opposed to consumers in any other state. Nor is there evidence in the record showing that Master Worldwide works with its distributors to, in turn, distribute Easy Slide to consumers in North Carolina. The company's product catalogs are available, in electronic form on the company's website for viewing and download by the general public, and they are also distributed, in hard copy format, to the company's distributors, none of which are located in North Carolina. (*See* ECF No. 275-1 ¶ 6; Kay Dep. Tr., ECF No. 341-1 at 19.) Based on the above, Plaintiff has, likewise, failed to demonstrate that Master Worldwide has purposefully availed itself of the privilege of conducting business in North Carolina to an extent sufficient to support specific personal jurisdiction over it in this case. Because Plaintiff fails at the first prong of the specific jurisdiction inquiry, the Court need not proceed to the second and third prongs. *See Consulting Eng'rs,* 561 F.3d at 278. The Court, therefore, concludes that it lacks specific personal jurisdiction over Master Worldwide, and its motion to dismiss must, likewise, be granted.

## V. CONCLUSION

Plaintiff has failed to establish, by a preponderance of the evidence, that this Court has personal jurisdiction over either of the Master Defendants. Accordingly, the Court must grant the motion to dismiss of each Master Defendant, and these Defendants will be dismissed for lack of personal jurisdiction.

For the reasons outlined herein, the Court enters the following:

**ORDER**

IT IS THEREFORE ORDERED that Defendant Master Industries Worldwide, LLC's Motion to Dismiss for Lack of Personal Jurisdiction, (ECF No. 275), and Defendant Master Industries, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction, (ECF No. 282), are GRANTED, and each Master Defendant is DISMISSED WITHOUT PREJUDICE.

This, the 21st day of November, 2017.

/s/ Loretta C. Biggs
United States District Judge